[Crim. No. 365.   Fourth Appellate District.—July 9, 1938.]

THE PEOPLE, Respondent, v. WALLACE REED, Appellant.

Richard A. Haley for Appellant.

U. S. Webb, Attorney-General, and Bayard Rhone, Deputy Attorney-General, for Respondent.

MARKS, J.—Defendant was accused of the crime of grand theft, stealing an automobile belonging to C. C. Boucher. He was convicted and sentenced to confinement in the state penitentiary at San Quentin. His motion for new trial was denied. He has appealed from the judgment and from the order denying his motion for new trial.

He presents the following grounds for reversal of the judgment and order: That the evidence is not sufficient to sustain the verdict and judgment; errors of law occurring during the trial; misconduct of the district attorney; abuse of discretion on the part of the trial judge in refusing his request for further time to obtain further affidavits concerning newly discovered evidence; error in denying his motion for new trial.

The evidence discloses that C. C. Boucher owned and operated a second-hand automobile sales lot in the city of San Bernardino. On the afternoon of May 25, 1936, Boucher was in his office concluding the sale of an automobile to a customer when defendant drove up in a 1930 Ford coupe which he parked at the curb. Defendant approached Boucher and asked if he would accept the Ford in trade for a 1933 Dodge sedan. Boucher told defendant that he would and asked him to wait until he had completed the transaction in which he was then engaged. As soon as Boucher was free he looked for defendant. The Ford was still parked at the curb but defendant and the Dodge car were gone.

Burdette D. Shidler operated a garage in San Bernardino. Shortly after 6 o'clock P. M. of that same day Shidler received a telephone call asking him to go to Fortieth and Electric Streets in San Bernardino and bring in a broken-down automobile. Shidler went to the designated place and found defendant and the Dodge sedan which he towed to his garage, defendant riding with him in the tow car. The Dodge had thrown a connecting rod through the crank case. Defendant signed an order for the repair of the car. He gave his name as W. G. Reed but signed the order "Wallace Reed", his residence as Alhambra and his telephone number as

2972–R.   After the work order was signed defendant took his suitcase from the Dodge and departed.   He was apprehended about January 1, 1938.

The foregoing summary of the evidence is taken from the testimony produced by the plaintiff.   The defense was an alibi which was strongly supported.

■  Defendant urges that the foregoing evidence is insufficient to support the verdict and judgment principally because no intent to steal was proven and at most only an intent to "joy ride".

When defendant had Shidler take the car to the garage and when he signed the work order for its repair he asserted the *indicia* of ownership of it from which the jury could reasonably infer an intent to appropriate it to his own use, or, in other words, to steal it.   The evidence is positive that Boucher did not give defendant or any other person permission to drive the Dodge.   The jury could have reasonably inferred an intent to steal from such facts.

■  During the cross-examination of Shidler the following occurred:

"Q. Now then have you at any time subjected any of Reed's handwriting and the handwriting you have on this work sheet to a handwriting expert?

"Mr. Thompson: Objected to as immaterial, and irrelevant.

"Mr. King: And not proper cross-examination. . . .

"The Court: I can't see that it is important or even material.   Sustained.

"Q. You say later on you got an O. K. from the insurance company to repair the car and you repaired the car, is that true?

"A. That is right.

"Q. Do you know what company carried that insurance?

"A. No, I don't remember.

"Q. Do you know of your own knowledge, not what somebody told you, but do you know of your own knowledge whether or not the insurance company would have authorized the repair of that car if it had not been stolen?

"Mr. Thompson: Objected to as irrelevant and immaterial.

"The Court: Sustained."

We can find nothing prejudicial or erroneous in these rulings.   Defendant's counsel was very evidently on a "fishing excursion".   He made no proffer of proof and we can only

guess at what he expected to prove. If the expected proof is indicated in the questions it was immaterial. Shidler had no admitted handwriting of defendant with which to have the signature on the work order compared. No duty rested on him to have such comparison made. It made no difference to Shidler who paid him for repairing the Dodge.

█ The deputy district attorney in making the opening argument to the jury wrote his name several times on a black board and used these signatures to illustrate his argument concerning similarities and dissimilarities in signatures of the same person. Counsel for defendant objected to the district attorney "giving evidence in this case". The trial court ruled in the presence and hearing of the jury that the writings were used merely to illustrate the argument being made. We find no error in this ruling. Further, the remarks were not assigned as error and no request was made for an instruction to the jury to disregard them. Defendant points out another remark of the deputy district attorney which he now claims was prejudicial. No objection was made in the trial court, the remark was not assigned as prejudicial misconduct and no instruction was asked upon it. The remark, if error, could not have been seriously prejudicial and the error, if any, cannot be urged here for the first time. (See *People* v. *Harris,* 219 Cal. 727 [28 Pac. (2d) 906].)

█ Defendant urges that the trial court abused its discretion in denying him further time in which to obtain and file affidavits in support of his contention that there was newly discovered evidence which would materially bear upon the question of his innocence if a new trial were granted.

The verdict was returned on March 23, 1938, and Friday, March 25, 1938, was fixed as the time for the pronouncement of judgment. On that day defendant moved for a new trial on all statutory grounds and in support of his motion presented an affidavit of his counsel which purported to disclose newly discovered evidence. The affidavit was clearly deficient and time was granted in which to file a second affidavit which was filed on that day. Upon request of defendant the hearing of the motion was continued until March 28, 1938, to permit the production of additional affidavits. At that time defendant requested further time in which to obtain and file further affidavits. His counsel made a statement in which he detailed the proof he hoped to obtain. The request for

further time and the motion for new trial were denied and judgment was pronounced. Under this state of the record it is seriously urged that prejudicial error was committed that requires us to order a new trial.

The first affidavit was so insufficient that it requires no further notice. The second affidavit contains the following:

"That he is now and has been at all times, attorney for Wallace Reed, the defendant in the above-entitled case. That prior to the trial of said case on the 23d day of March, 1938, affiant had attempted to obtain information from the Sheriff's office and other persons, concerning the facts surrounding the stealing of the property, for which defendant stands charged.

"However, due to the fact that affiant was not familiar with any of the details of the crime which had been committed affiant was unable to obtain any information whatsoever relative to the taking of the automobile other than affiant was informed that the defendant, Wallace Reed, had been identified as the party in question. Affiant had no way of knowing that a second and subsequent car had been stolen from the immediate vicinity of the place where the first car was left after it had broken down.

"Thereafter, following the trial and after the jury had been instructed and retired to the jury room for deliberations, affiant ascertained from Deputy Sheriff George Pickett that the party who placed the stolen automobile in the garage, operated by Mr. Shidler, within five minutes took another automobile within a few feet of Mr. Shidler's garage, returned to Mr. Shidler's garage and obtained his suitcase and other property from the automobile that he had placed in Mr. Shidler's garage, transferred the property from the automobile left in Mr. Shidler's garage to the second automobile and proceeded on his way. That within a short time thereafter, the second automobile was recovered in the state of Texas, it having theretofore been reported a stolen automobile to the Sheriff's office and returned to its rightful owner in San Bernardino. Had affiant been in possession of this information, his cross-examination of the witness, Mr. Shidler, would have included questions relative to the above matter and affiant would have been able to place upon the witness stand, witnesses to corroborate in every detail the above statements; and if a new trial is granted, affiant will be able to place such evidence before the court and jury by the witness,

Deputy Sheriff George Pickett, and will be able to unequivocally prove that the party who took the automobile from Mr. Boucher's lot also drove the second, stolen automobile to the state of Texas and it being manifestly impossible for the defendant, Wallace Reed, to have accomplished said trip to Texas, he not having been absent from his place of employment. Justice will prevail and defendant, Wallace Reed, acquitted.''

The record shows the following proceedings under date of March 28:

''The Court: People vs. Reed.

''Mr. Haley: If the Court please, last Friday afternoon the Court granted me a continuation for the purpose of obtaining further affidavits. I left here Friday, and Saturday morning I called Alhambra. The police officer, Colby, who is the investigating officer on the stealing of the car in Alhambra, I was informed didn't come to work until 4:00 o'clock. I went out to see him and he informed me at that time he was not able to get into the identification room, and asked me to come back Monday morning, which was this morning. I went back this morning and Mr. Colby was not there. I talked to the chief of police, who took me into the bureau of identification and showed me a picture of the Wallace Reed who had been positively identified as the man that took the car from the car lot in Alhambra, and four people who personally knew him positively identified him as W. C. Reed. I saw a picture of that party, and that picture, if the Court please, was not the picture of this defendant. I was not able to get affidavits by reason of the fact the Chief of Police had not made the investigation, although he knew that picture was the one positively identified, yet he could not personally make the affidavit. I am going to ask the Court at this time for two or three days more continuance to obtain these affidavits. It is very apparent from the feeling in Alhambra, almost a positive fact, that we have here tried and convicted the wrong person. After making my motion before Your Honor last week I went back to my office and looked over the transcript of the preliminary hearing which was the only source of information I had, and I found there was no reference at all to Alhambra or 315 North Second Street or a car coming from Alhambra. The testimony at the preliminary hearing starts at the Used Car Lot in San

Bernardino, and there is no mention made of a Ford coupe other than to say it was left at that lot. Therefore I do a little bit excuse myself for not having made the investigation I now speak of; and as I say, I had no information with reference to Alhambra, and thereafter while the jury was out while talking with one of the deputy sheriffs here I did receive the information but was denied the right to inspect the sheriff's file. The picture there, if the Court please, was of a man whose hair was beginning to leave him and he was partially bald upon the left temple. The hair was not kinky and wavy as this defendant's, it was straight, and while the facial expression in a little way represents the defendant yet no person could be mistaken as to the fact they are not the same person. I have made arrangement with deputy sheriff Gorman, who is now at this time procuring for me one of his pictures of this defendant here, which he is going to allow me to take back to Alhambra, and I am going to place it alongside the picture that has been identified by the witnesses in Alhambra and ask them again to make an identification as to which of the two pictures is W. G. Reed or Wallace Reed, and ask for identification whether they pick out the picture I take back or the picture there. On those grounds we ask a few more days continuance in which to prepare and file an affidavit.

"The Court: Well what would all that demonstrate if we had that proof?

"Mr. Haley: Simply this, if the Court please: There is no doubt but what the person who took the car in Alhambra is the person who took the car in San Bernardino for this reason: There was a Wallace Reed living at 315 North Second Street in Alhambra. That party was well known to the people he lived with and to the Used Car Dealer. That party took a Ford coupe, and I might state at this time the reason he was not prosecuted in Alhambra was because the Used Car Dealer there gave him permission to use the car to try out around the block, and he came to San Bernardino. There was a Wallace Reed there. He did take that Ford coupe and that Ford coupe was brought here. Apparently the person who brought it here talked to the Used Car dealer, and he left the Ford coupe at that lot and took from that lot the other car. Therefore that person is the person who stole the car in San Bernardino, and he is not this Wallace

Reed. The Court will recall the testimony that the man came to Mr. Boucher and said to Mr. Boucher, 'How much will you give me for my Ford coupe?' Mr. Boucher said to him, 'I am busy now,' but he did step to the door and did look out and did see the Ford coupe. He said 'I am busy now, I will talk to you later.' And the next time he looked for the defendant he was gone and the Dodge automobile was gone, but the Ford coupe was there. That I believe was the testimony that was produced here at the trial. Therefore it would necessarily follow the person that took the Ford coupe in Alhambra was the same person who drove the car away. Consequently when we show there is another individual and show all those facts there will be no doubt in anybody's mind but what we have here the wrong man, regardless of what the witnesses who testified this was the man they say. There is no doubt but what those witnesses in their own heart and in their own mind are as honest as anyone could be, but of course we know a person can be mistaken, and I believe that is what happened here and I believe that the ends of justice will well be served if we are granted not over five days in which to prepare and to present to Your Honor those affidavits. I believe this beyond the question of a doubt, I say on my honor as an attorney of this court, I believe after those affidavits are presented here and if the District Attorney is so inclined that he makes an independent investigation in Alhambra, it will be the District Attorney and not myself that will make a motion for a new trial in this case. . . .

"Mr. Haley: I think we could at this time make application to the Court for probation. That would retain jurisdiction.

"The Court: Even if your affidavits were here, I don't see that this Court could then grant a new trial on the face of the testimony in this case.

"Mr. Haley: That may be true, but we wish to perfect our record.

"The Court: Those two witnesses, Shidler and Boucher, stated positively and without equivocation, and against them there is the suspicion somebody else did it. There is no positive testimony in the light of what you have said as to this new matter, there is nothing in that that would positively acquit the defendant of any connection with the crime.

"Your application for probation will be denied. The facts in this case are all before the Court. The probation officer

could not add anything to the situation except possibly throw some light upon the defendant's past life.

"The application for a continuance will be denied."

We have here the serious question of a breach of discretion on the part of the trial judge in refusing to grant defendant time in which to secure affidavits supporting the statements of his counsel for it is of course admitted that the matter of granting a continuance was within the sound discretion of the trial court.

In measuring the due exercise of such discretion each case should be judged from its own factual background. Here the people could not have been prejudiced in any way by a delay of five days which defendant asked to enable him to produce the affidavits. On the other hand, there is an indication that defendant might have been the victim of mistaken identity. If the evidence could be produced showing that another Wallace Reed stole the Alhambra Ford and which was driven by him to San Bernardino and left in front of the Boucher used car lot and later stole a second Ford in San Bernardino which he drove to Texas, defendant could hardly have been guilty of stealing the Dodge if he was at his place of employment six days during each week. The delay meant nothing to the people and might have meant much to defendant if the affidavits supported the statement of his counsel. The deputy district attorney did not seriously oppose the continuance.

Of course, the affidavit and statement of counsel did not demonstrate the innocence of defendant. There are several weaknesses in it. There is no showing or direct offer to show that the 1930 Ford coupe stolen in Alhambra was the same 1930 Ford coupe that was left in front of the Boucher sales lot in San Bernardino. There is only argument to that effect. That the man who rode in the tow car to the Shidler garage was the man who stole the automobile and drove it to Texas is not established unless Pickett's statement be supported. However, if that could have been established it would have been a strong argument in favor of defendant because there is strong evidence that defendant was at his place of employment in Hermosa Beach six days out of every week during the month of March, 1935.

Counsel for defendant made a reasonable explanation why he was not in possession of any of these facts prior to the trial. If this client was innocent there was no reasonable

source of information open to him except the officers of the law and while some of it at least was known to a deputy sheriff of San Bernardino County it was withheld until after the case had gone to the jury. While peace officers and officials connected with detection and prosecution of crime should be diligent in ferreting out and prosecuting the guilty they should be fair with an accused. Evidence pointing to his innocence should not be suppressed. For a guilty man to escape punishment is a miscarriage of justice, but for an innocent man to be convicted is unthinkable.

A quite similar factual situation on a motion for new trial was presented to the trial judge in the case of *People* v. *Goodwin,* 202 Cal. 527 [261 Pac. 1009]. There counsel for defendant asked time in which to present affidavits of newly discovered evidence in support of the motion for new trial. The request was denied. It was there held that the trial judge should have granted defendant time in which to produce affidavits. The judgment was reversed with directions to grant the motion for new trial.

As under the facts before us a delay of not to exceed five days in pronouncing judgment could not have injured the cause of the people in the slightest degree and as the affidavit and statement of counsel indicated there had been no lack of diligence on the part of defendant in seeking the new evidence and as it was strongly indicated that, if produced, such evidence would have had an important bearing on the question of the guilt or innocence of defendant the trial judge should have granted the time requested to produce the affidavits. On the record before us and on the authority of the Goodwin case we conclude that the refusal of the request for time in which to produce the affidavit and the consequent denial of the motion for new trial constituted prejudicial and reversible error.

The judgment and order appealed from are reversed with instructions to the trial court to retry the cause.

Barnard, P. J., and Haines, J., *pro tem.,* concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 8, 1938.