ROBERT L. BLAND, Judge,
concurring.
This claim presents a case of first impression in West Virginia. Bearing in mind the rule that taxes may be levied and collected only for public purposes, after a rather extended examination of authorities relating to the power of the Legislature to make appropriations of public revenues and due consideration of the record of the trial court in which claimant was convicted of a felony as well as the record made in this court upon the investigation and hearing of the claim under consideration, I have reached the conclusion that an award should be made in favor of claimant, for the reasons hereinafter set forth, and accordingly agree with my colleague, Judge Schuck, to that extent and effect.
I deem it advisable to observe at this juncture that claimant is a nonresident of West Virginia and a citizen of Ohio. He was arrested in that state, confined in prison there, and subsequently brought to this state by West Virginia officers and placed in the Jackson county jail. He was indicted by a grand jury of that county and later *216 convicted of an offense alleged to have been committed there, and sentenced to- a term of imprisonment in the penitentiary at Moundsville. Upon his trial in the circuit court of Jackson county he testified that he had never been in that county prior to the time he was brought there to the jail. He gave like testimony in this court.
After claimant was incarcerated in the Jackson county jail and before his trial, investigation was made by members of the West Virginia department of public safety, leading them to believe that claimant was innocent of the offense charged against him and upon which he was to be prosecuted, and they so informed the prosecuting attorney of Jackson county. That official had definite information as to the findings and conclusions of the West Virginia officers. If their information had been allowed to be considered by the jury it is possible, and it seems to me also probable, that the verdict rendered would have been one of acquittal rather than conviction. If the prosecuting attorney of the county, an officer of the sovereign state of West Virginia, failed in the discharge of his duty to.give the defendant, the claimant here, that consideration to which he was entitled, when charged with so heinous an offense, and his failure may have been a determining factor in the verdict rendered by the jury, then is the state not responsible? All of the people within its boundaries constitute the state — the state is actually the people.
In 23 Corpus Juris Secundum, at page 276, we find the following pertinent authority:
“While officials connected with detection and prosecution of crime should be diligent in ferreting out and prosecuting the guilty, they should be fair to accused and evidence pointing to his innocence should not be suppressed. People v. Reed, 81 P.2d 162, 27 Cal. App. 2d 484.”
I am persuaded that a great and irreparable wrong has been done to claimant by the state of West Virginia, *217 by reason of his conviction in a West Virginia court and his imprisonment in the West Virginia penitentiary. He suffered not only the stigma and ignominy incident to a felon’s conviction, but in addition thereto the loss of an established business which theretofore had yielded him an income of from five to seven thousand dollars annually.
His pardon, after due investigation as to his innocence of the offense for which he was tried in this state, was recommended by the superintendent of the department of public safety, and an unconditional pardon was given to him by the Governor of West Virginia.
To my mind it seems clear that the claim is based upon the strongest ground of equity and justice.
May the Legislature make a valid appropriation to claimant, a private person, within the meaning of the law authorizing it? I think it may. In 51 Am. Jur. Taxation, Sec. 326, this broad rule is laid down:
“It is stated generally that a tax may not be levied to pay a claim for which no legal or moral obligation exists. However, the public necessities are not the sole purposes to which the public reve-nes may be applied, but, on the contrary, considerations of natural equity, gratitude, and charity are never out of place, even in determining the imposition of the public burdens. Claims against the state founded in equity and justice in the largest sense, or in gratitude or charity, will support a state tax, provided the payment thereof is directly in the public interest.” (Italics supplied.)
In the case of Ogden v. Saunders, 25 U.S. (12 Wheat.) 213, 318, 6 L. Ed. 606, Mr. Justice Trimble, in his opinion on page 317, defines the far-reaching meaning of a moral obligation in this language:
“Moral obligations are those arising from the admonitions of conscience, and accountability to the Supreme Being. No human law-giver can *218 impair them. They are entirely foreign from the purposes of the constitution.”
In Fairfield v. Huntington, reported in 205 Pac. 814 and 22 A.L.R.. at page 1438, the Supreme Court of Arizona held that a statute to reimburse a state employe for an accidental injury arising out of and in the course of his employment is not special legislation, since it is to satisfy an obligation resting upon all the people tvho constitute the state.
On the power of the Legislature to make an appropriation to satisfy an award in favor of claimant, it is pertinent to cite the New York case of Williamsburg Savings Bank v. State, 243 N. Y. 231, wherein it is held:
“The State may voluntarily recognize just obligations which it fairly and honestly ought to pay even though they do not constitute purely legal claims. When a claim is presented which securely rests upon a foundation of equity and justice and which involves a moral obligation, it may be recognized without infringing upon constitutional provisions protecting taxpayers against waste and extravagance. But the decision to pursue this course is a privilege and not an obligation, and the State alone, through its Legislature, can decide which course it will pursue. It cannot delegate to the courts or some other agency the duty of determining what its decision ought to be.”
May it not be said that the instant case or claim is one which rests upon a foundation of equity and justice? And does not an obligation rest upon all of the people of the state to make some reparation for the great wrong which claimant has suffered?
Our own Supreme Court in the Cashman case, cited by Judge Schuck, lays down the rule that a moral obligation is an obligation or a duty, legal or equitable, not imposed by statute but created by contract or resulting from wrong *219 ful conduct which would be judicially recognized as legal or equitable in cases between private persons. If the claimant is entitled to recover in this case his award must be based on some wrongful act done by the state. We thus come to the point where we must decide what is meant by the term wrongful act. As between individuals there is certainly no necessity for the existence of an evil intent in order for one individual to commit a wrong upon another. Should there then be any distinction between state and individual as to what is meant by a wrongful act? I think not. It is true that the state is sovereign in its power. It is also true that the individual is supreme in his right.

Fiat justitia ruat coelum!