Filed 10/15/14  P. v. Kerivan CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Appellant, | E059546 |
| v. | (Super.Ct.No. RIF1101066) |
| JOHN MICHAEL KERIVAN III, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  Ronald L. Taylor, Judge.  (Retired judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Paul E. Zellerbach, District Attorney, Natalie M. Pitre, Deputy District Attorney for Plaintiff and Appellant.

Steven L. Harmon, Public Defender, Joshua Knight, Deputy Public Defender for Defendant and Respondent.

A jury found defendant and respondent John Michael Kerivan III guilty of failing to update his sexual offender registration during 2011.  (Pen. Code, § 290.012, subd.

1

(a).)[1, 2] Approximately two months after the verdict, defendant moved for a new trial on the basis of newly discovered evidence, specifically, his 2011 registration receipt (proof of registration card). (§ 1181, subd. (8).) The trial court granted defendant's motion for a new trial. On appeal, the People contend the trial court erred because (1) defendant failed to show the receipt could not have been discovered with reasonable diligence and produced at trial; and (2) defendant did not prove the receipt was authentic such that it could cause a different result to be probable at a retrial. We affirm the order granting a new trial.

### FACTUAL AND PROCEDURAL HISTORY

A.     TRIAL EVIDENCE

The process of registering is as follows: The offender goes to the sheriff's station, a staff member gives the offender a form, the offender completes the form (8102 Form), the deputy interviews the offender, the deputy reviews the form with the offender, the deputy ensures the offender understands the form, the deputy gives the

---

[1] All subsequent statutory references will be to the Penal Code unless otherwise indicated.

[2] The People assert defendant was convicted of failing to register as a sexual offender within five days of moving to a new residence. (§ 290.013, subd. (a).) Defendant asserts he was convicted of failing to register during the required annual update. (§ 290.012, subd. (a).) The amended information reflects defendant was charged in count 1 with the section 290.013 crime, and in count two with the section 290.012 offense. The April 17, 2013, minute order reflects defendant was found not guilty on count 1, but guilty on count 2, and lists the count 2 crime as section 290.013, subdivision (a). We infer the opening brief and the minute order contain a typographical error, as the jury's verdict form reflects the count 2 offense is section 290.012, subdivision (a), which comports with the amended information.

2

offender a copy of the form, the information from the form is entered into a statewide database known as the Violent Crime Information Network (VCIN), and the form goes into a file at the sheriff's station.

In April 2010, Riverside County Sheriff's Deputy Adams registered sexual offenders at the Perris Sheriff's Station. When Deputy Adams handled the registrations in 2010, he entered the offenders' information into the VCIN the same day the offenders' completed the forms. Defendant completed the 8102 Form in April 2009 and 2010, and they were properly filed at the Perris Sheriff's Station.

In 2012, Detective Rosas (Rosas) was responsible for sexual offender registrations at the Perris Sheriff's station. Rosas uploaded offender information to the VCIN on a daily basis. Rosas explained that the offenders' forms are filed in an unlocked file cabinet, which all detectives can access. Rosas and a community service officer were responsible for filing the forms in the filing cabinet. Prior to testifying in court, Rosas looked in defendant's file for a 2011 registration form, but did not find a 2011 form. Rosas did not look through the rest of the files in the filing cabinet to determine if defendant's 2011 form had been misfiled.

Riverside County Probation Officer Roberts (Roberts) was part of the Sexual Assault Felony Enforcement Taskforce (SAFE) from 2009 to 2012. In April 2010, Roberts went to defendant's registered address, which was on Homeland Avenue, but defendant was not there. In February 2011, Roberts returned to the same registered address, but defendant was not there. Roberts went to the registered address a third

3

time, in March 2011, and defendant was not at the address. Roberts left his business card at the registered address, but defendant never contacted Roberts.

In March 2011, Senior Investigator Remmers (Remmers) was assigned the task of locating defendant. Remmers searched through various databases trying to locate defendant, such as the National Criminal Information Network (NCIC) and out-of-state sex offender registries. Nothing indicated defendant had registered outside of California. Remmers found a February 21, 2011, incident report, in the Sheriff's database, involving defendant. The incident occurred at an address on Northwinds Drive.

In March 2011, Remmers went to the Northwinds residence, but defendant was not there. That same day, Remmers went to the Homeland address, but defendant was not there either. Remmers wrote a report and submitted it to the district attorney's office for possible prosecution. Remmers never located defendant. Defendant was arrested in January 2012. Detective Velardes was responsible for sexual offender registrations at the Perris Sheriff's Station in 2011. Detective Velardes did not testify at defendant's trial.

During closing arguments, the prosecutor asserted defendant was guilty of failing to register in 2011 because (1) defendant's registration was not in the California database; (2) defendant's 8102 Form from 2011 was not in defendant's file at the sheriff's station; (3) defendant was not registered out of state; and (4) defendant was not incarcerated in 2011. Defendant's trial counsel argued that the sheriff's deputies "messed up in their recordkeeping process." Defense counsel asserted, "It's reasonable

4

that somebody made a mistake and that [defendant's] information didn't make it into the database," i.e., defendant's form was misplaced by the deputy before defendant's information was entered into the database.

In count 1, defendant was charged with failing to register after he moved residences. (§ 290.013, subd. (a).) The jury found defendant not guilty on count 1. In count 2, defendant was charged with failing to update his registration as he was required to do on an annual basis. (§ 290.012, subd. (a).) The jury found defendant guilty on count 2. The jury delivered its verdict on April 17, 2013.

B.      MOTION FOR NEW TRIAL

On June 24, 2013, defendant filed a motion for new trial. The motion reflected that on May 10, 2013, the public defender's office received an envelope from K. Harmon at an address on Northwinds Drive containing "a state of California registration receipt (a proof of registration card) indicating that [defendant], updated his registration on March 30, 2011. The deputy's name listed on the card is Deputy Velardez (Badge #2544)." Although referred to as a "receipt," the item was more in the nature of an identification card; it listed defendant's name, defendant's address, defendant's date of birth, the registering law enforcement agency, the date of registration, the registering officer's name and badge number, and included defendant's thumbprint.

An investigator from the public defender's office contacted Detective Velardez (Velardez). The investigator showed defendant's receipt to Velardez. Velardez said the receipt was "consistent" with the receipts issued to registrants and that "he issued the registration receipt to [defendant] on March 30, 2011, because his name and badge

5

number [are] on the receipt." The investigator also contacted Katrina Harmon (Harmon), who explained she was packing defendant's belongings to store them when she found the receipt "folded up 'into a little square.'" When asked, Harmon said the receipt was not forged.

In the motion, defense counsel asserted the receipt evidence was relevant to show the sheriff's missing paperwork was due to human error, rather than defendant's failure to register. Defendant asserted the guilty verdict at his trial likely would have been different if the jury had been shown the 2011 registration receipt because defendant's argument would have been "significantly bolstered." Defense counsel further asserted the registration could not have been discovered earlier using reasonable diligence because defendant "cannot be expected to conduct a search of every possible location where this receipt ended up." Defense counsel explained that approximately one year had passed from the time the receipt was issued to the time charges were filed, and defendant had already registered again in 2012, so there was no need for defendant to still have the 2011 registration card in his possession. Defense counsel assumed the card had been thrown away, since defendant could not locate it at the time of trial.

C.    OPPOSITION

The prosecution opposed the motion. The prosecutor asserted Velardez told the prosecutor that defendant's receipt "was like the ones given out when he registered sex offenders; however, [Velardez] needed to verify [it] at the Perris station in order to determine whether he actually gave the defendant a receipt from that date."

6

The prosecution argued the evidence was not newly discovered because the receipt had been in defendant's possession since 2011. Therefore, defendant was on notice that he needed to look for the receipt when charges were filed. Thus, the prosecutor asserted defendant failed to show reasonable diligence. Further, the prosecution argued a different verdict might be rendered if the receipt were authentic; however, defendant failed to show the authenticity of the receipt.

D.     HEARING

In July 2013, the trial court held a hearing on defendant's motion. Prior to the hearing, the court held a meeting in chambers where it indicated its tentative finding was that the receipt constituted newly discovered evidence. At the hearing, the court received defendant's original 2011 receipt into evidence. Harmon testified at the hearing.

Harmon, who was defendant's girlfriend of 10 years, explained that after defendant was taken into custody, she assumed he would "be gone a while." Therefore, Harmon went to her uncle's house where defendant's belongings were stored, in order to move defendant's property to her (Harmon's) house; Jim Burbank (Burbank) was the name of Harmon's uncle. The property was stored in a motor home on Burbank's property. Several people stored their belongings in the motor home, and Harmon did not want other people "messing with [defendant's] stuff."

Harmon explained that when she found the folded receipt, she assumed it was another girl's telephone number, which is why she opened it. Harmon believed defendant did not keep his old receipts, so she never thought to look for it prior to trial.

7

Harmon found the receipt in a "junk drawer with all kinds of miscellaneous stuff." Harmon described the motor home as messy—"Your stuff, your spot; your mess, your problem, basically." Defendant's belongings were disorganized. Defendant frequently stayed on the couch in Burbank's house—not in the motor home. Defendant could access the motor home when Burbank was home and the keys were available.

After Harmon testified, the court found the receipt was newly discovered evidence. The court then asked about the forgery issue. The prosecutor explained "the '1s' on the 2011 of the date of registration are completely different from the '1s' everywhere else." The prosecutor said the font should be "the exact same," but there was a difference in the font on defendant's receipt. Specifically the issues were whether the "1s" had a line at the bottom of them or not, and the size of the font.

The trial court explained that the prosecutor was giving argument, not evidence. The prosecutor offered to contact the investigators to have them testify about comparing the fonts. The trial court said it did not "see the need to continue today's hearing." The prosecutor also explained that Velardez said he had never seen an offender have a registration card but not have corresponding paperwork in the sheriff's file or information in the database.

Defense counsel said she was unsure how to respond, since the prosecutor's statements were not evidence. Defense counsel asserted the prosecutor could present evidence at trial to argue "whether or not this is an authentic document." Defense counsel said she tried to authenticate the document for the hearing by having the investigator speak with Velardez and providing the investigator's written statement.

8

Defense counsel asserted the authenticity of the receipt "could be an issue for the jury to decide."

The trial court said, "I really think that the issue [the prosecution] is raising with respect to the authenticity of this registration receipt is something that would be raised before the jury at a subsequent trial, and let the jury make that decision. On its face, it appears to the Court that this is a registration receipt for [defendant's] registration on March 30th, 2011. [¶] So for the purposes of this hearing only, the Court is going to find that this appears to be a legitimate registration receipt. Again, that would be something that the jury might determine at a trial on this matter, which [the prosecution] then would have the opportunity to present competent evidence with regard to her argument."

The court concluded that if there were to be a retrial then a different result would be probable. The trial court explained, "In fact, I don't know that it would go to trial because it would be an absolute defense by [defendant] to the charge that he failed to register in 2011." The court continued, "With respect to the issue concerning whether or not this evidence could have been discovered earlier using reasonable diligence from the testimony of Ms. Harmon, it doesn't sound to the Court as if it would have been found had there been reasonable diligence exercised." Accordingly, the trial court granted defendant's motion for a new trial.

E.      MOTION FOR RECONSIDERATION

The prosecution filed a motion for reconsideration. The People asserted defendant could not meet the requirements for showing reasonable diligence because

9

the receipt had been in defendant's possession since 2011 and defendant should have known of its existence. The prosecution argued defendant's claim should have proceeded via a petition for writ of habeas corpus, rather than a motion for new trial.

Defendant opposed the motion. Defendant asserted the prosecution was raising the same arguments it raised at the motion hearing, and the prosecution did not present new law. Therefore, defendant asserted the motion should be denied. Defendant contended a new trial, rather than habeas corpus, was the proper remedy because new trials can be granted on the basis of newly discovered evidence. The trial court denied the motion for reconsideration.

## DISCUSSION

A.    <u>CONTENTION</u>

The People contend the trial court erred by granting defendant's motion for new trial because (1) defendant failed to show the receipt was newly discovered evidence that could not have been found prior to trial with reasonable diligence; and (2) the authenticity of the receipt is questionable and therefore defendant did not show the probability of a different result at a retrial.

B.    <u>LAW</u>

"'In ruling on a motion for new trial based on newly discovered evidence, the trial court considers the following factors: "'1. That the evidence, and not merely its materiality, be newly discovered; 2. That the evidence [is] not cumulative . . . ; 3. That it be such as to render a different result probable on a retrial of the cause; 4. That the party could not with reasonable diligence have discovered and produced it at the trial; and 5.

10

That these facts be shown by the best evidence of which the case admits.'" [Citations.]'
[Citation.]" (*People v. Howard* (2010) 51 Cal.4th 15, 43.)

"'""The determination of a motion for a new trial rests so completely within the court's discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears.'" [Citations.] "'[I]n determining whether there has been a proper exercise of discretion on such motion, each case must be judged from its own factual background.'" [Citation.]'" (*People v. Howard*, *supra*, 51 Cal.4th at pp. 42-43.)

C.    NEWLY DISCOVERED

"Facts within the defendant's knowledge before termination of the trial are not newly discovered. [Citation.]" (*People v. Clauson* (1969) 275 Cal.App.2d 699, 705.) In the instant case, the trial court could reasonably conclude no one knew the receipt still existed at the time of trial. While defendant, Harmon, and defense counsel may have known defendant received the receipt, they arguably did not know the receipt was still in defendant's possession. Harmon testified that she believed defendant did not retain his registration receipts so she "never would have even thought to look for one." Based upon this evidence, the trial court could reasonably conclude defendant and his trial counsel did not know, prior to the end of trial, that the receipt was in defendant's possession, i.e., they did not know the receipt still existed and had not been destroyed/discarded. Accordingly, the trial court did not err by concluding the receipt was newly discovered evidence.

11

D.    REASONABLE DILIGENCE

We now turn to the factor of reasonable diligence.  "'Diligence is a relative term incapable of exact definition.  What would amount to due diligence under one state of facts would fall absolutely short of it under another and different state of facts.  It depends, therefore, so essentially upon the particular circumstances of each case, with all their distinct and varying phases and bearings, as they have appeared to the lower court at the trial and throughout the conduct of the cause, in determining whether diligence has been used in any particular instance, that this court should hesitate to disturb a ruling upon this ground where it has any substance whatever upon which to rest."  (*Brannock v. Bromley* (1939) 30 Cal.App.2d 516, 521; see also *People v. Williams* (1962) 57 Cal.2d 263, 273 ["The term 'diligence' is 'incapable of exact definition because it is a relative term' [citation] and the 'diligence' of defendant in marshaling his evidence for the trial must be determined in the light of the 'peculiar circumstances' involved.  [Citation.]"].)

It appears from the record that no one believed the receipt was in defendant's possession—the prosecution assumed it never existed, and the defense assumed defendant discarded it prior to charges being filed.  Accordingly, the question we face is whether the trial court's decision was arbitrary when it concluded defendant could not be expected to search all of his belongings prior to trial for an item he thought was no longer in his possession.  Stated differently, because we are applying an abuse of discretion standard of review, the question we must address is whether it is reasonable to conclude defendant could have exercised reasonable diligence by not searching

12

everything he owned. We conclude the trial court's finding is within the bounds of reason.

Harmon testified that defendant had "never ever kept his old [receipts] before, so [she] never would have even thought to look for one." Based upon this testimony, the trial court could infer defendant and his trial counsel also believed the receipt had been discarded. Therefore, it would be reasonable for defendant not to search every possible location for the receipt, since it likely had been destroyed/discarded. Further, the receipt was located in a "junk drawer," "it was not found among paperwork." One may expect defendant to have gone through his paperwork to determine if, by chance, he still had the receipt, but searching a junk drawer in a storage area, or searching every possible area and belonging, would be beyond what could reasonably be expected—it would be extraordinary to conduct such a search for an item one believed did not exist. As a result, the trial court could properly find that defendant's failure to locate the receipt prior to trial did not constitute a lack of reasonable diligence.

The People contend there is "no evidence" suggesting defendant "could not have obtained his copy of the registration card with reasonable diligence." The People highlight the facts that defendant (1) had the card in his possession, (2) had access to the card before and during trial, and (3) knew he registered in 2011. The People's argument is not persuasive because they are ignoring Harmon's testimony, which reflects, "And he's never ever kept his old [receipts] before, so I never would have even thought to look for one . . . ."

The facts the People highlight are correct, but ignoring Harmon's testimony is problematic. As explained *ante*, in the particular facts of this case, one must consider what constitutes reasonable diligence in looking for an item one believes has been destroyed or discarded. The trial court could reasonably conclude that searching every possession for such an item goes beyond reason. Searching a paperwork pile or file cabinet might be within reason, but searching everything, such as a junk drawer, would be unreasonable. Therefore, defendant's failure to find the receipt in the junk drawer prior to trial or during trial does not reflect a lack of reasonable diligence. As a result, we conclude the trial court's diligence finding is not irrational or arbitrary. (*People v. Carmony* (2004) 33 Cal.4th 367, 377 ["a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it"].)

E.    DIFFERENT RESULT

We now focus on the factor concerning the probability of a different result at a retrial, i.e., the authenticity issue.

If the newly discovered evidence is inadmissible, then it will not be probable for a new result to be achieved at a retrial. (See *People v. Loar* (1958) 165 Cal.App.2d 765, 778-781 [discussing inadmissible evidence and a motion for new trial].)

The only evidence related to the authenticity of the receipt was (1) Harmon's statement that the receipt was not forged; and (2) the public defender's investigator's written statement that Velardez told the investigator, "he issued the registration receipt

14

to [defendant] on March 30, 2011 because his name and badge number [are] on the receipt."[3] The prosecutor offered contrary argument, but not evidence.

Given that the evidence only supported a finding the receipt was authentic because it was issued by Velardez, we conclude the trial court reasonably determined the receipt could probably produce a different verdict at a retrial because the evidence would be admissible. As a result, we conclude the trial court did not abuse its discretion.

## DISPOSITION

The order granting a new trial is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
J.

We concur:

RICHLI
Acting P. J.

KING
J.

---

[3] The written statement was attached as an exhibit to defendant's motion for new trial.

15