[Crim. No. 6664. Second Dist., Div. One. Dec. 7, 1959.]

In re EMERY NEWBERN, on Habeas Corpus.

Joseph A. Ball, under appointment by the District Court of Appeal, and Ball, Hunt & Hart for Petitioner.

Roger Arnebergh, City Attorney (Los Angeles), Philip E. Grey, Assistant City Attorney, and William E. Doran, Deputy City Attorney, for Respondent.

SHEA, J. pro tem.*—The petitioner in this case is the same individual with whom this court was concerned in a prior case. (*In re Newbern,* 168 Cal.App.2d 472 [335 P.2d 948].) As was stated in the opinion in that case he is "a chronic alcoholic and has suffered numerous arrests for drunkenness." His numerous arrests demonstrate that Mr. Newbern is well known to several police departments. His numerous petitions for writs of habeas corpus demonstrate that he is not one "to sleep on his rights."

The petition, as originally filed in this case, concerned two separate arrests; the first on February 28, 1959, and the second on March 6, 1959. Also it should be noted that there were two other separate petitions for writs of habeas corpus filed in this court. In each case the writ was issued returnable in this court on a date certain. By stipulation all three were set for hearing on oral argument on the same day.

At the hearing, one of the petitions was dismissed because the questions raised therein had become moot. The other petition is the subject of a decision which will be filed concurrently with this one.

The petition in this case was filed by Mr. Newbern in propria persona. After the issuance of the writ, pursuant to the petitioner's request, this court appointed counsel to represent him.

When the case first came up for hearing it was acknowledged that there were several disputed factual issues. To resolve these issues, this court referred the matter to a referee to make findings on these factual issues. The issues to be determined by the referee were settled by stipulation of counsel for both sides. Thereafter a hearing was had and the referee's report and findings were filed with this court in

---

*Assigned by Chairman of Judicial Council.

due course. The matter was then placed upon a special calendar in this court for oral argument.

In his brief, counsel for the petitioner has presented no argument with respect to the circumstances arising out of the arrest of February 28, 1959. At the time of oral argument he advised this court that he would not urge any of the points concerning that arrest. We are, therefore, only concerned with the arrest of March 6, 1959, and its attending circumstances.

The recitals in the petition are to the following effect: Because the petitioner was successful in his prior application for a writ of habeas corpus before this court (*In re Newbern, supra*), he has incurred the ire of the members of the various police departments. They have dubbed him "Mr. District Court of Appeals." They have singled him out and are determined to give him "a bad time." He asserts that when he was arrested on March 6, 1959 (the same day that this court decided the former case), he was taken to the police station and booked as a drunk. He protested to the police officers that he was not drunk and asked to be given an intoximeter test. This was refused. He then requested permission to call a doctor, at his own expense, for the purpose of obtaining a blood test. This was also refused. The finding of the referee, which is controlling on this point, is as follows:

"Defendant did ask arresting officers for an intoximeter test and he was informed by them that such tests were not given to a plain drunk or a person arrested for being drunk in public view. Defendant did make a request to arresting officers for a private physician to be brought in from the outside at his own expense and did ask to have a sample of his blood taken and examined to determine if there was any alcohol in his blood, which request was refused."

Since the refusal to give the intoximeter test is not urged in the brief or argument, the sole question to be decided may be stated as follows: Is it a denial of due process of the law to refuse to permit a person charged with being drunk in a public place, to call a doctor, at his own expense, to take a sample of his blood for the purpose of determining the percentage of alcohol in the blood so that the person charged may obtain evidence necessary to his defense? We are of the opinion that it is a denial of due process.

The Constitution gives to every person accused of a crime, including drunks, the right to a fair trial, the right to summon witnesses in his own defense, the aid of counsel

and due process of law. (Cal. Const., art. I, § 13.) The spirit and the purpose of these constitutional guarantees is to assure to everyone a full and ample opportunity to be heard before he can be deprived of his liberty or his property. While it is primarily the function of the courts to see that these rights are not denied, law enforcement agencies also have a responsibility to protect as well as to prosecute.

 ''While peace officers and officials connected with detection and prosecution of crime should be diligent in ferreting out and prosecuting the guilty they should be fair with an accused. Evidence pointing to his innocence should not be suppressed. For a guilty man to escape punishment is a miscarriage of justice, but for an innocent man to be convicted is unthinkable.'' (*People* v. *Reed*, 27 Cal.App.2d 484 at 493 [81 P.2d 162].)

Counsel for respondent argues that there could be no suppression of evidence because the evidence did not in fact exist. However, when, in the exercise of their power to arrest, the police deprived the arrested person of the opportunity to obtain evidence that might establish his innocence, they are suppressing it just as effectively as if it did exist and they withheld it.

The accuracy of blood tests for the purpose of determining intoxication has been recognized in many courts. ''[W]hile the accounts of eyewitnesses are often uncertain and conflicting on the issue of intoxication, blood alcohol tests are so subject to reliable scientific analysis that 23 states have enacted statutes sanctioning the use of such tests. (See *Breithaupt* v. *Abram*, 352 U.S. 432 [77 S.Ct. 408, 1 L.Ed.2d 448, 451-452, fn. 3].) Nor should it be ignored that a test of this kind may serve to exonerate, as well as to convict.'' (*People* v. *Duroncelay*, 48 Cal.2d 766 at 772 [312 P.2d 690].)

In the Breithaupt case, *supra*, the United States Supreme Court held that the taking of a blood sample, without the consent of the defendant, for the purpose of ascertaining the alcoholic content in the blood, and the admission of the results of the test into evidence, did not violate the due process clause of the Fourteenth Amendment. However, the following language at page 439 of the decision is appropriate here:

''And the more so since the test likewise may establish innocence, thus affording protection against the treachery of judgment based on one or more of the senses.'' These decisions clearly indicate that this type of evidence should be equally available to prove innocence as well as guilt.

■ It is a matter of common knowledge that the intoxicating effect of alcohol diminishes with the passage of time. In a matter of a few hours an intoxicated person may "sober up." ■ The efficacy of a blood test depends upon its being made as soon as possible after the time of the offense. To be of any probative value the test must be "near" to the offense in point of time. If it is not taken promptly after the arrest, it proves nothing.

■ While there is no duty or obligation on the law enforcement agencies to give a blood test under these circumstances, the arrested person, on his own behalf, should be entitled to a reasonable opportunity to attempt to procure a timely sample. To refuse him such reasonable opportunity is to deny him the only opportunity he has to defend himself against the charge.

In *State* v. *Munsey*, 152 Me. 198 [127 A.2d 79], the point was considered. In that case the defendant was permitted to call a doctor but the doctor was not available. The court held that since he was given the opportunity to call a doctor he was not denied due process. In 127 A.2d 79, at page 82, the Supreme Court of Maine spoke as follows: "If all reasonable efforts fail and no blood sample is in fact procured, no rights of the respondent are infringed for his right is not to have a test sample taken but *only to have a reasonable opportunity* to attempt to gather the desired evidence. When the respondent is held incommunicado and his requests for assistance in procuring a doctor are unreasonably ignored or refused by the detaining officers, it may be said that the respondent is denied the essentials of governmental fair play. Officers charged with law enforcement must always be mindful that the public has as great an interest in the vindication of the innocent as it does in the punishment of the guilty."

■ In the case at bar the defendant requested the opportunity to call a doctor of his own choice and at his own expense in an effort to obtain the only evidence that could vindicate him of the charge. This was refused. We cannot but wonder why. If he was drunk as charged, the police would have had the evidence of the blood test to corroborate their opinion. Their refusal tends to cast some doubt upon their opinion and lends credence to the protest of Mr. Newbern. The refusal to permit him to call a doctor was unreasonable and a denial of due process.

The petitioner is discharged.

Fourt, Acting P. J., and Lillie, J., concurred.