[No. 2841–3. Division Three. September 20, 1979.]

THE STATE OF WASHINGTON, *Respondent,* v. SANTIAGO CARRANZA, *Appellant.*

*Rickey C. Kimbrough* and *Kimbrough, Everett & Crawford,* for appellant.

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *David W. Waterbury, Deputy,* for respondent.

MUNSON, J.—Santiago Carranza was charged with two counts of negligent homicide. He waived his right to a jury trial; the trial judge found him guilty on both counts. Carranza appeals the admission at trial of (1) a blood test

taken after his arrest without implied consent warnings, and (2) his refusal to take a Breathalyzer test.

On the evening of January 19, 1978, Carranza's car crossed the center line and struck a 1975 Volkswagen carrying Ralph and Marilyn Wilson. The Wilsons were dead by the time police arrived. Carranza was taken to the Toppenish police station where he refused to take a Breathalyzer test. He was then taken to the local hospital where a blood sample was taken. Trooper Cortez, the arresting officer, did not advise Carranza of the implied consent warnings (specifically, his right to have additional tests). Both Trooper Cortez and Carranza testified at trial that he had refused to take the Breathalyzer test. Another officer testified at trial that the blood test reading was .24. No objection was taken to the admission of the blood test.

Carranza contends that even though no objection was taken to the admission of evidence of the blood tests at trial, the error violated Carranza's constitutional rights under the Fifth and the Fourteenth Amendments. He argues that the blood test should have been excluded because it was unlawfully taken without his consent and without the necessary warning that he had the right to refuse or had the right to have additional tests. We find no merit to this contention.

Initiative 242 was passed by popular vote in November 1968 and codified as RCW 46.20.308(1).[1] According to the

---

[1] "(1) Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent, subject to the provisions of RCW 46.61.506, to a chemical test or tests of his breath or blood for the purpose of determining the alcoholic content of his blood if arrested for any offense where, at the time of the arrest, the arresting officer has reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle while under the influence of intoxicating liquor. The test or tests shall be administered at the direction of a law enforcement officer having reasonable grounds to believe the person to have been driving or in actual physical control of a motor vehicle upon the public highways of this state while under the influence of intoxicating liquor. *Such officer shall inform the person of his right to refuse the test, and of his right to have additional tests administered by any qualified person of his choosing as provided in RCW 46.61.506.* The officer shall warn the driver that his privilege to drive will be revoked or denied if he refuses to submit to the test.

statute, a driver was deemed to have given consent to a Breathalyzer test if arrested by the police for driving while intoxicated. However, the driver had the right to refuse with the consequence that his driver's license would be revoked. Subsequent to 1968, numerous cases have held that the police officer must adequately apprise the driver of his right to refuse the test and to have additional tests taken; the officer has the burden of showing the statutory warnings were given. *State v. Wetherell,* 82 Wn.2d 865, 514 P.2d 1069 (1973); *State v. Richardson,* 81 Wn.2d 111, 499 P.2d 1264 (1972); *State v. Krieg,* 7 Wn. App. 20, 497 P.2d 621 (1972). If the proper warning was not given, the evidence could be excluded. *State v. Krieg, supra.* Carranza relies strongly on the above cases for his contention that the blood test should have been excluded.

 In 1975 the legislature added a proviso[2] which states, in part: "a breath or blood test may be administered without the consent of the individual" in a negligent homicide case. RCW 46.20.308(1). The proviso is a narrow exception to the preceding section of the prior 1968 act. A person under arrest for negligent homicide has no right to refuse a breath or blood test. The statutory language provides no alternatives to refusal, but clearly states a test may be administered without consent. It would, therefore, be a futile act for an officer to give the driver his right–to–refuse warnings and then proceed to have the test administered after the driver had refused. The procedure anticipated by the added statutory provision has been sanctioned in

---

Unless the person to be tested is unconscious, the chemical test administered shall be of his breath only: . . ." (Italics ours.)

[2] "*Provided,* That if an individual is under arrest for the crime of negligent homicide by motor vehicle as provided in RCW 46.61.520, or if an individual is under arrest for the crime of driving while under the influence of intoxicating liquor or drugs as provided in RCW 46.61.506, which arrest results from an accident in which another person has been injured and there is a reasonable likelihood that such other person may die as a result of injuries sustained in the accident, a breath or blood test may be administered without the consent of the individual so arrested."

*Schmerber v. California,* 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826 (1966); *cf. State v. Moore,* 79 Wn.2d 51, 483 P.2d 630 (1971). A blood sample is physical rather than testimonial evidence and therefore does not come within the protection of the Fifth Amendment. *Schmerber v. California, supra* at 763–64.

■ Carranza argues that the proviso merely relates to the issue of the consent to take a test and does not excuse other required notification of the right to have additional tests. We disagree. *State v. Krieg, supra,* interpreting that statute as it existed prior to the 1975 amendment, held that the failure to inform a defendant of his rights under RCW 46.20.308(1) results in the exclusion of the results of a Breathalyzer test subsequently administered in a prosecution for negligent homicide. The 1975 amendment took away any right the defendant might have to refuse a blood or breath test if he was arrested for negligent homicide or arrested for a violation of RCW 46.61.506 (driving while under the influence) after an accident has occurred and there is a reasonable likelihood that another person might "die as a result of injuries sustained in the accident."

Carranza next contends that he was denied any realistic opportunity to confront and challenge the State's blood test evidence because he was not advised of his right to additional tests by a person of his choosing. We disagree. Carranza was given his *Miranda* rights and was told he had the right to counsel. Although it may be preferable to tell a driver who has been arrested for negligent homicide that he has the right to have additional tests, the lack of such information does not rise to the level of a constitutional denial of due process. Carranza cites no authority for such an argument.[3]

A driver whose license will be automatically revoked if he refuses to take the breath test is entitled to implied consent warnings, including his right to have additional tests. *State*

---

[3]At no time has Carranza challenged either the accuracy or the methods of administering or testing the State's blood sample.

*v. Richardson, supra; Connolly v. Department of Motor Vehicles,* 79 Wn.2d 500, 487 P.2d 1050 (1971); *Blaine v. Suess,* 22 Wn. App. 809, 811, 592 P.2d 662 (1979). As noted above, the implied consent warnings apply when a driver has the right of refusal. As stated in *Richardson* at page 114, it was the apparent intent of the statute that "the person arrested be advised of his right to have additional tests . . . *in order that he might be able to exercise an intelligent and informed judgment in deciding whether to submit or refuse to submit to a test.*" (Italics ours.) Here, Carranza had no right to refuse. As noted in *Nowell v. Department of Motor Vehicles,* 83 Wn.2d 121, 124, 516 P.2d 205 (1973), the implied consent law was enacted as a police power measure in the interest of the general welfare and safety:

> To carry out the intended objective, . . . the enactment has a threefold purpose: (1) to discourage individuals from driving an automobile while under the influence of intoxicants, (2) to remove the driving privileges from those individuals disposed to driving while inebriated, and (3) to provide an efficient means of gathering reliable evidence of intoxication or nonintoxication.
>
> To further the objective, the *implied consent enactment provided a civil administrative proceeding for revoking driving privileges in appropriate instances,* separate and distinct from the criminal proceedings which might ensue following the arrest of an offending motorist.

(Italics ours.)

Thus, we find Carranza had no constitutional right to notice that he had the right to additional tests. To exclude the State's evidence in a negligent homicide case, based upon such an argument, would thwart the purpose of the statutory amendment of 1975. Failure to object waived the issue. The State rightfully contends Carranza had the opportunity to run additional tests on the blood sample the State took and retained until trial; he did not utilize this opportunity.

Carranza also contends the admission of his refusal to take the Breathalyzer was prejudicial, relying on *State v. Parker,* 16 Wn. App. 632, 558 P.2d 1361 (1976). The facts at trial are distinguishable. In *Parker,* the State introduced the evidence of refusal over the defendant's objection in a jury trial; the jury was further instructed that it might infer guilt from such refusal and the State was allowed to argue the refusal was an admission of guilt. The *Parker* court found it significant that the jury may have been influenced, particularly where the refusal was emphasized by a specific instruction. *State v. Parker, supra* at 636. Here, however, the case was tried before a judge without a jury, and both Carranza and Officer Cortez testified to his refusal. Carranza concedes that under the statute no consent was necessary.

Carranza contends, pro se, that he was denied a fair trial because his attorney was incompetent for failing to make objections to constitutional issues and because he was not given *Miranda* warnings at the time of his arrest. We find no merit to either contention. A review of the entire record reflects Carranza was afforded an effective representation and a fair and impartial trial. *State v. Adams,* 91 Wn.2d 86, 586 P.2d 1168 (1978); *State v. Cobb,* 22 Wn. App. 221, 589 P.2d 297 (1978). The evidence was undisputed at trial that Officer Cortez did give Carranza his *Miranda* warnings. In addition, the State introduced no statements made by Carranza while he was in custody of a self–incriminating nature which would give rise to the procedural safeguards of *Miranda. State v. Woods,* 3 Wn. App. 691, 477 P.2d 182 (1970). We find no error.

Judgment affirmed.

ROE, J., concurs.

McINTURFF, J. (dissenting)—I respectfully disagree with the majority's conclusion that because a driver arrested for negligent homicide has no right to refuse to take a chemical test to determine the alcoholic content of his blood, police

officers consequently have no duty to advise him of his right to have additional tests taken under RCW 46.20–.308(1).[4]

When a chemical test to determine blood alcohol content is made and subsequently introduced in a criminal trial where intoxication is the foundation for the charge, the issue of the accuracy of the testing procedures immediately arises. The purpose underlying the defendant's right to have additional tests taken thus becomes obvious: "[T]hat he may have his own tests made if he fears the accuracy or fairness of the test to be given by law enforcement officers." *State v. Richardson,* 81 Wn.2d 111, 116, 499 P.2d 1264 (1972).

In one of the few cases to address the constitutional significance of the defendant's right to additional sobriety tests, the court in *In re Newbern,* 175 Cal. App. 2d 862, 1 Cal. Rptr. 80 (1959) held it was a violation of due process to

---

[4]RCW 46.20.308(1):

"Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent, subject to the provisions of RCW 46.61.506, to a chemical test or tests of his breath or blood for the purpose of determining the alcoholic content of his blood if arrested for any offense where, at the time of the arrest, the arresting officer has reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle while under the influence of intoxicating liquor. The test or tests shall be administered at the direction of a law enforcement officer having reasonable grounds to believe the person to have been driving or in actual physical control of a motor vehicle upon the public highways of this state while under the influence of intoxicating liquor. Such officer shall inform the person of his right to refuse the test, *and of his right to have additional tests administered* by any qualified person of his choosing as provided in RCW 46.61.506. The officer shall warn the driver that his privilege to drive will be revoked or denied if he refuses to submit to the test. Unless the person to be tested is unconscious, the chemical test administered shall be of his breath only: *Provided,* That if an individual is under arrest for the crime of negligent homicide by motor vehicle as provided in RCW 46.61.520, or if an individual is under arrest for the crime of driving while under the influence of intoxicating liquor or drugs as provided in RCW 46.61.506, which arrest results from an accident in which another person has been injured and there is a reasonable likelihood that such other person may die as a result of injuries sustained in the accident, a breath or blood test may be administered without the consent of the individual so arrested. In such circumstances, the provisions of subsections 2 through 6 of this section shall not apply." (Italics ours.)

refuse a defendant charged with intoxication the opportunity to summon a physician for the purpose of obtaining an additional, independent test to determine his blood alcohol content. The court's reasoning on this point at pages 864–66 is persuasive:

> The Constitution gives to every person accused of a crime, including drunks, the right to a fair trial, the right to summon witnesses in his own defense, the aid of counsel and due process of law. (Cal. Const., art. I, § 13.) The spirit and purpose of these constitutional guarantees is to assure everyone a full and ample opportunity to be heard before he can be deprived of his liberty or his property. While it is primarily the function of the courts to see that these rights are not denied, law enforcement agencies also have a responsibility to protect as well as to prosecute.
>
> "While peace officers and officials connected with detection and prosecution of crime should be diligent in ferreting out and prosecuting the guilty they should be fair with an accused. Evidence pointing to his innocence should not be suppressed. For a guilty man to escape punishment is a miscarriage of justice, but for an innocent man to be convicted is unthinkable." (*People v. Reed*, 27 Cal.App.2d 484 at page 493, [81 P.2d 162].)
>
> . . . [W]hen, in the exercise of their power to arrest, the police deprived the arrested person of the opportunity to obtain evidence that might establish his innocence, they are suppressing it just as effectively as if it did exist and they withheld it.
>
> The accuracy of blood tests for the purpose of determining intoxication has been recognized in many courts. ". . . Nor should it be ignored that a test of this kind may serve to exonerate, as well as to convict." (*People v. Duroncelay*, 48 Cal.2d 766 at page 772, [312 P.2d 690].)
>
> . . .
>
> . . . [T]he arrested person, on his own behalf, should be entitled to a reasonable opportunity to attempt to procure a timely sample. To refuse him such reasonable opportunity is to deny him the only opportunity he has to defend himself against the charge.

In *State v. Krieg*, 7 Wn. App. 20, 27, 497 P.2d 621 (1972), chemical tests performed under the authority of RCW

46.20.308(1) were rendered inadmissible in a criminal prosecution as a result of the officer's failure to advise the defendant of his right to have additional tests administered. Unlike the instant case, however, *Krieg* did not involve a criminal prosecution for negligent homicide under circumstances where the defendant had no right to refuse the sobriety test administered by the State. Nevertheless, language contained in a subsequent Washington case indicates the result in *Krieg*—exclusion of the evidence—should still obtain in the case at hand.

In *State v. Canaday,* 90 Wn.2d 808, 585 P.2d 1185 (1978), the court held the routine destruction of used Breathalyzer ampules did not violate the constitutional-due process requirement that the State preserve all evidence potentially material and favorable to the defense. In support of this decision, the court placed considerable emphasis upon the defendant's statutory right to obtain additional tests. With respect to this statutory right, the court said at page 817:

> Persons arrested and asked to take a Breathalyzer test are *uniformly offered the opportunity to obtain their own best evidence for use at any trial resulting from the conduct leading to their arrest.* They have the right to obtain an independent test of their blood alcohol content administered by a qualified person of their own choosing. RCW 46.61.505(5). They are informed of this right when asked to take the test. Although we do not believe failure to obtain an independent test could amount to a waiver of any recognized constitutional right to due process, the statutory requirement demonstrates an important protection of the subject's right to *fundamental fairness* which is built into our implied consent procedure.

(Italics ours.) Therefore, I conclude even though the defendant's consent to take the chemical tests for intoxication was unnecessary under the circumstances, he should have been advised of his right to have additional tests taken by a qualified person of his own choosing. Thus, not knowing of his right to have additional tests was a denial of the opportunity to procure a blood test on the charge of

negligent homicide and prevented the accused from obtaining evidence necessary to his defense.[5] This was a denial of due process. *In re Newbern, supra* at 83.

Because constitutional due process principles are, in fact, raised by the defendant's appeal, defense counsel's failure to raise this issue at trial does not preclude review by this court. RAP 2.5(a).[6]

For these reasons, I respectfully dissent.

Reconsideration denied October 31, 1979.

Review denied by Supreme Court January 18, 1980.

---

[5]The majority states Mr. Carranza had the opportunity to perform additional tests on the blood sample obtained by the State. However, the availability of this sample may have been of little use to the defendant. Although this case involved a chemical blood test, the court in *State v. Canaday*, 90 Wn.2d 808, 814, 585 P.2d 1185 (1978), noted the scientific community generally denies the reliability of retesting procedures involving used Breathalyzer ampules. Furthermore, the exercise of the right to obtain additional tests contemporaneous with the test administered by the State undoubtedly has more force in rebutting the State's evidence.

[6]RAP 2.5(a):

"The appellate court may refuse to review any claim of error which was not raised in the trial court. However, a party may raise the following claimed errors for the first time in the appellate court: . . . (3) manifest error affecting a constitutional right."