[No. 3073-3-III. Division Three. March 4, 1980.]

THE STATE OF WASHINGTON, *Respondent,* v. VIRGINIA L. TURPIN, *Appellant.*

*Ronald B. Webster* and *Hickman & Webster,* for appellant.

*Ronald R. Carpenter, Prosecuting Attorney,* for respondent.

ROE, J.—Virginia Turpin appeals from a verdict of guilty of negligent homicide. She was driving on the wrong side of the highway when her car struck head on a car driven by Gabriel Cardenas, who died from the impact. Sergeant Brackins of the Washington State Patrol arrived on the scene, extricated the injured Mrs. Turpin from her car, and helped place her in an ambulance which took her to the hospital. He testified that he smelled alcohol on her breath. He remained at the accident scene for a short time and then went to the hospital.

The sergeant told the doctor and the attending nurse that Mrs. Turpin was under arrest and requested a blood sample be taken, and it was. Although she was being treated for a broken jaw, she was alert, responsive, oriented, and able to understand verbal communications. Mrs. Turpin was never told she was under arrest, because, Sergeant Brackins stated, he did not want to traumatize her. She was not placed under guard at the hospital, nor were any further instructions given to the staff regarding the arrest.

Three days later, a Trooper Tucker interviewed Mrs. Turpin in her hospital room. In anticipation of the interview, she had not been given any medication so she would be alert and coherent. Her sister was in the room during the interview. She was read her *Miranda* rights for the first time and, at her sister's suggestion, she signed the waiver of rights form. She then told the trooper that the car she had been following on the night of the accident had been weaving and that she had had only one drink.

After the questioning and outside of the hospital room, the trooper told the sister that the defendant might be

charged with negligent homicide, that he was still investigating the case, and that a blood test had been taken. An attorney was thereupon called. Mrs. Turpin still did not know she had ever been arrested or that she had been in custody. The police did not restrict her movements in any way. Subsequently, she was charged and convicted.

■■ The first question is whether the officer had a right to make a warrantless arrest of Mrs. Turpin at the hospital. Generally, warrantless arrests in Washington, as at common law, are permissible only when a misdemeanor has been committed in the presence of the arresting officer[1] or when the arresting officer has probable cause to believe that a felony has been committed. *Beck v. Ohio,* 379 U.S. 89, 13 L. Ed. 2d 142, 85 S. Ct. 223 (1964); *Cerny v. Smith,* 84 Wn.2d 59, 62, 524 P.2d 230 (1974). The common law has also been enlarged by statute as to traffic misdemeanors. RCW 46.64.017 (repealed by Laws of 1979, 1st Ex. Sess., ch. 28, § 4, p. 1101, reenacted in relevant part at RCW 10.31-.100, Laws of 1979, 1st Ex. Sess., ch. 28, § 1, p. 1099), in effect at the time of the accident, stated:

> A law enforcement officer investigating at the scene of a motor vehicle accident may arrest the driver of a motor vehicle involved in the accident if the officer has probable cause to believe that the driver has committed in connection with the accident a violation of the traffic laws or regulations.

We have found no case where RCW 46.64.017 has been applied in the context of a felony arrest such as the charge here. The statute is in derogation of the common–law rules for misdemeanor arrests, so must be strictly construed. *State ex rel. McDonald v. Whatcom County Dist. Ct.,* 92 Wn.2d 35, 593 P.2d 546 (1979), *aff'g* 19 Wn. App. 429, 575 P.2d 1094 (1978). *See State v. Grant,* 89 Wn.2d 678, 683, 575 P.2d 210 (1978). The court in *McDonald* stated that either the rule of strict construction or the rule of lenity, *State v. Arndt,* 87 Wn.2d 374, 385, 553 P.2d 1328 (1976),

---

[1] RCW 10.31.100 provides exception for warrantless misdemeanor arrests in certain situations.

requires the statute to be construed in favor of the defendant, who had been arrested on misdemeanor charges.

In *McDonald,* the investigating officer first contacted the defendant after he had been taken to the hospital. Finding the language of RCW 46.64.017 ambiguous, the *McDonald* court applied the above rules of construction and held that an arrest for a misdemeanor made not at the scene of an accident, but at the hospital to which Mr. McDonald had been taken, was an illegal arrest.

This statute grants an additional right to arrest for a misdemeanor, if the arrest occurs at the scene of the accident, even though not committed in the officer's presence. At common law, the officer had no such right except for a breach of the peace. Thus, we interpret the statute only to enlarge the right to arrest for a misdemeanor with no intention to constrict the right to arrest for a felony.[2] If a driver in a negligent homicide case had also committed a felonious assault at the scene on a bystander, an investigative officer, having probable cause, should be able to arrest for either felony, unrestricted to the scene. Having smelled alcohol on defendant's breath and having observed the dead driver of the other car, which had the right-of-way, Sergeant Brackins had probable cause to believe that Mrs.

---

[2]RCW 46.64.030 read:

Procedure governing arrest and prosecution. The provisions of this title with regard to the apprehension and arrest of persons violating this title shall govern all police officers in making arrests without a warrant for violations of this title for offenses either committed in their presence or believed to have been committed based on probable cause stemming from investigation at the scenes of motor vehicle accidents pursuant to RCW 46.64.017, *but the procedure prescribed herein shall not otherwise be exclusive of any other method prescribed by law for the arrest* and prosecution of a person for other like offenses.

(Italics ours.) The italicized portion of this statute lends further support to our holding. Without RCW 46.64.015, an officer would be very limited in his ability to arrest for misdemeanor traffic offenses not committed in his presence and which do not involve those exceptions in RCW 10.31.100. RCW 46.64.030 acknowledges that officers may now arrest for traffic violations not committed in their presence if with probable cause, but stresses that other methods (*e.g.*, common-law arrests, arrests based on some other statute) may also be used to effect an arrest.

Turpin had committed a felony. He could arrest her at the scene or wherever he found her. He should not be limited to arresting her only at the scene.

The next question is whether the defendant must have been advised that she was under arrest before there was a valid arrest. This is crucial because under RCW 46.20-.308(1) a person must be under arrest for negligent homicide before blood may be drawn without consent. *State v. Carranza*, 24 Wn. App. 311, 314, 600 P.2d 701 (1979), *review denied*, 93 Wn.2d 1006 (1980). *See Schmerber v. California*, 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826 (1966).

■ There are varying definitions of arrest. *Kilcup v. McManus*, 64 Wn.2d 771, 777, 394 P.2d 375 (1964) defines an arrest as deprivation of liberty and movement or freedom to remain by one using physical force, threats, or by conduct. In *State v. Sullivan*, 65 Wn.2d 47, 51, 395 P.2d 745 (1964), the rule is stated that a person is under arrest

> when he is deprived of his liberty by an officer who intends to arrest him. It is not always necessary for an officer to make a formal declaration of arrest. See: 1 Varon, Searches, Seizures and Immunities 75 (1961); *Henry v. United States* (1959), 361 U.S. 98 [4 L. Ed. 2d 134, 80 S. Ct. 168]; *United States v. Boston* (1964), 330 F. (2d) 937, 939.

*State v. Byers*, 88 Wn.2d 1, 6, 559 P.2d 1334 (1977) added, "Appellants were under arrest from the moment they were not, and knew they were not, free to go."

> Another, but not inconsistent, view of "arrest" is found in *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968) where it was said at page 26:
> An arrest is the initial stage of a criminal prosecution. It is intended to vindicate society's interest in having its laws obeyed, and it is inevitably accompanied by future interference with the individual's freedom of movement, whether or not trial or conviction ultimately follows.

*State v. McIntyre*, 92 Wn.2d 620, 623, 600 P.2d 1009 (1979).

It does not appear in *McIntyre* that the defendant was advised he was under arrest. Rather, he was asked to go to the police station, which he did in his own vehicle, but it was stipulated that he was not given a choice. He was not free to decline to go to the police station. Thus, he was considered to be under arrest for purposes of dismissal under CrR 3.3.

In *Seattle v. Sage,* 11 Wn. App. 481, 523 P.2d 942, *review denied,* 84 Wn.2d 1013 (1974), relied on by the trial court, Sage was injured in an auto accident. A police officer arrived, determined that Sage was unconscious, called for an ambulance, and advised the ambulance attendants that Sage was under arrest and was not to be allowed to leave the hospital. The court determined there had been a valid arrest at the time "the officer informed the aid car attendants that the defendant was under arrest and was not to be allowed to leave." *Seattle v. Sage, supra* at 485.

The rule from the cases seems to be that it is the fact of an arrest, and not the communication of it, that is decisive. Normally, a communication may be verbal or as a result of circumstances, such as the officer's asking a person to accompany him to the police station, handcuffing a person, or some other act which would alert someone that he was not free to leave. *Seattle v. Sage, supra,* represents the logical exception to this rule for those occasions when it would be a useless or unnecessary act to inform the defendant he is under arrest. *See* Restatement (Second) of Torts § 128 (1965).[3] Even the arresting officer may be mistaken as to whether the defendant is under arrest, but a defendant is

---

[3]Restatement (Second) of Torts § 128 (1965):

"Actor's Manifestation of His Intention

"(1) Except as stated in Subsection (2), the arrest of another is not privileged unless the actor manifests to the other his intention to arrest him and

". . .

"(2) None of the manifestations stated in Subsection (1) is required if the making thereof is reasonably believed by the actor to be

"(a) dangerous to the actor or a third person, or

"(b) likely to frustrate the arrest, or

"(c) useless or unnecessary."

so long as his liberty of movement is substantially restricted. *State v. Ward,* 24 Wn. App. 761, 765, 603 P.2d 857 (1979). *But see State v. Sullivan,* 65 Wn.2d 47, 395 P.2d 745 (1964).

In this case, Sergeant Brackins told hospital personnel that Mrs. Turpin was under arrest. His excuse for not telling Mrs. Turpin was the possible effect on her in her injured condition, but he would not have let her leave. There was no reason for the officer to physically restrain her since she was at the hospital with serious injuries, and there was no danger of her leaving. It would serve no purpose to insist that an officer traumatize an arrestee or antagonize family by requiring the ritual phrase "You are under arrest," as that person may be taken into surgery or treated by hospital attendants.

■ It is of no moment that the officer did not formally release Mrs. Turpin or that she was permitted voluntarily to leave the hospital. *See State v. McIntyre, supra.* An arrest may be for a limited purpose, such as interrogation, taking blood, or even a momentary search.

■ Mrs. Turpin next contends that the blood test should have been suppressed because she was not informed of her right to have independent tests performed allegedly as required by RCW 46.20.308(1). This issue was decided adversely to her claim by *State v. Carranza, supra,* which held that a person arrested for negligent homicide by motor vehicle has no right to be notified that he may have additional and independent sobriety tests administered. Mrs. Turpin's contention is without merit.

While recovering in the hospital, Mrs. Turpin was ques-

---

Comment *g* reads:

"*g.* If the actor is excused, under the statement in this Subsection, from making, at the time of arrest, any of the manifestations required by Subsection (1), he must make them at the first practicable moment thereafter."

tioned by Trooper Tucker after she had waived her *Miranda*[4] rights. She moved to suppress her statements, alleging that the trooper had not advised her she was being investigated in a criminal matter. Without such information, she argues, she could not have made a knowing and voluntary waiver of her constitutional rights.

■ *State v. Owen*, 13 Wn. App. 146, 148–50, 534 P.2d 123 (1975) held that a person may make a knowing and voluntary waiver of *Miranda* rights without first knowing the general nature of the charges. *See State v. Cashaw*, 4 Wn. App. 243, 480 P.2d 528 (1971). "To hold otherwise would stifle effective investigative efforts because at the time of an interview the parameters of the crime may not even be known." *State v. Owen, supra* at 149. The *Miranda* rule was designed to give warnings in a custodial interrogation setting that any statement made by the defendant may be used in court against him. *Miranda* warnings assure that any incriminating statements are voluntary. No charge need be pending nor need the police have focused on a defendant before he may voluntarily waive his privilege against self–incrimination. The police may investigate several potential defendants and give *Miranda* warnings to all of them, even though only one could be guilty.

Accordingly, the trial court is affirmed.

GREEN, C.J., concurs.

McINTURFF, J. (dissenting)—Based upon the reasoning in my dissent in *State v. Carranza*, 24 Wn. App. 311, 600 P.2d 701 (1979), *review denied*, 93 Wn.2d 1006 (1980), I believe the results of Mrs. Turpin's blood test should have been

[4]*Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

502

suppressed because she was not told of her right to have independent tests taken.

Reconsideration denied March 21, 1980.

Review granted by Supreme Court May 23, 1980.