IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 36542-5-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| KENNETH LEROY STEPHENS, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — This appeal asks when is an arrest an arrest?  A law enforcement officer handcuffed appellant Kenneth Stephens and advised him of his *Miranda* rights, then questioned Stephens before informing him he was under arrest.  Stephens contends the officer arrested him before questioning him and that a statement confessing to theft must be suppressed in addition to methamphetamine found during a search incident to arrest.  The State argues that the arrest occurred only after the officer announced the arrest.  We agree with Stephens and reverse his conviction for possession of a controlled substance.

FACTS

An employee at Stan's Merry Mart, in Wenatchee, called 911 after seeing a man in the store who she believed stole video equipment earlier in the week. The man was later discovered to be Kenneth Stephens. The employee described the man to 911 as white, in his mid-thirties, and wearing a black baseball cap and a black and gray jacket. The employee stated the man had not stolen anything that day, but video footage showed him stealing cameras on previous days. According to the employee, the store wanted to press charges for the previous thefts. The employee further advised 911 that the suspect left the store and was riding a bike heading south on Mission Street.

Wenatchee Police Officer Albert Gonzalez responded to the Stan's Merry Mart 911 call and went to Mission Street. Officer Gonzalez located Kenneth Stephens, who rode a bike south on Mission Street and matched the caller's description of the alleged thief's clothing, race, and sex. Stephens, however, did not match the age described by the employee as he was in his late-fifties. Gonzalez recognized Stephens due to previous contacts.

Officer Albert Gonzalez informed Kenneth Stephens that 911 received a call about him from Stan's Merry Mart. Stephens dismounted his bicycle. He denied any

involvement in a theft. Officer Gonzalez told Stephens he could not leave. Gonzalez

then handcuffed Stephens and read the *Miranda* warnings from a card.

After Mirandizing and cuffing Kenneth Stephens, Officer Albert Gonzalez began

questioning. Stephens continued to deny any knowledge about stolen cameras. Gonzalez

told Stephens that witnesses could identify him in video footage. Stephens then admitted

to stealing the cameras and selling them for $50. Stephens told Officer Gonzalez that he

could retrieve the cameras if allowed to go free. Angela Thresher, an employee of Stan's

Merry Mart, arrived at the scene and positively identified Stephens as the suspect.

Gonzalez then told Stephens that he was under arrest. Gonzalez searched Stephen's

person and located two bags with a crystal substance and a pipe coated in a crystal

residue. At the Washington State Patrol Crime Laboratory, the substance on the pipe

tested positive for methamphetamine.

PROCEDURE

The City of Wenatchee initially charged Kenneth Stephens, in Chelan County

District Court, with third degree theft. Later, the city dismissed its charge and the State of

Washington filed, in superior court, an information charging Stephens with first degree

trafficking in stolen property and unlawful possession of a controlled substance,

methamphetamine.

3

Kenneth Stephens moved to suppress all evidence obtained as a result of his

detainment by Officer Albert Gonzalez. Stephens contended that Officer Gonzalez

placed him under custodial arrest when he first handcuffed him and that Gonzalez lacked

probable cause to arrest him. Kenneth Stephens also filed a motion to dismiss the charges

due to a delay in the State's filing charges, during which delay law enforcement allegedly

destroyed evidence.

The trial court denied the motion to suppress evidence. The court entered findings

of fact, two of which Kenneth Stephens challenges on appeal:

> 2.5   Officer Gonzalez *detained* Defendant to investigate the
> reported theft of the video cameras. Officer Gonzalez advised Defendant of
> his Constitutional (*Miranda*) rights from a printed card, and Defendant
> stated he understood and was willing to speak.
> 2.6   Officer Gonzalez advised Defendant that they were
> investigating a theft of some video cameras from Stan's and that Defendant
> had been positively identified by employees; Defendant admitted to stealing
> the items and selling them. *At this point, Defendant was* informed he was
> under arrest, *arrested*, and searched incident to arrest (upon which meth
> was found on Defendant's person).

Clerk's Papers (CP) at 173 (emphasis added) (alteration in original). The trial court

concluded, based on the call from the Stan's Merry Mart employee and Officer

Gonzalez's reasonable conclusion that Kenneth Stephens matched the description of the

person in the store, that Gonzalez had reasonable suspicion to conduct an investigatory

stop of Stephens. The trial court also denied the motion to dismiss based on an alleged violation of speedy trial rights.

The trial jury convicted Kenneth Stephens of unlawful possession of a controlled substance, methamphetamine. The jury found Stephens not guilty of trafficking in stolen property in the first degree.

The sentencing court denied Kenneth Stephens's request for a residential drug offender sentencing alternative. The court also denied Stephens's wish for credit for time already served. The sentencing court imposed $500 in legal financial obligations with a stipulation that the obligations bear interest from the date of the judgment.

## LAW AND ANALYSIS

Kenneth Stephens assigns six errors to trial court proceedings. First, the trial court erred when refusing to suppress the evidence of the methamphetamine found on his person because Officer Albert Gonzalez arrested him before questioning him and Gonzalez lacked probable cause to arrest him. Second, the trial court erred when refusing to dismiss charges based on the purported infringement of Stephens's speedy trial rights. Third, insufficient evidence supported the conviction for possession of a controlled substance. Fourth, the sentencing court improperly denied Stephens a residential drug offender sentencing alternative. Fifth, the sentencing court erroneously failed to give

Stephens credit for time already served in jail. Sixth, the sentencing court mistakenly imposed interest on the legal financial obligations assessed. Because we accept Kenneth Stephens's first assignment of error, we do not address his other assignments.

This appeal presents unique circumstances. Almost immediately after first confronting Kenneth Stephens, Officer Albert Gonzalez placed Stephens in handcuffs and read him the *Miranda* rights. Thereafter, Gonzalez asked Stephens about his potential involvement in the theft of cameras from Stan's Merry Mart. After Stephens confessed guilt, Gonzalez told Stephens that he was under arrest. Officer Gonzalez conducted a search incident to arrest and found methamphetamine on Stephens's person. Typically, the law enforcement officer approaches a suspect and asks the suspect about involvement in a crime before handcuffing him and advising him of constitutional rights. Typically, the officer advises the accused of his *Miranda* rights only after informing the accused he is under arrest.

The obverse order of events attending to the intercourse between Officer Albert Gonzalez and Kenneth Stephens requires us to decide whether Gonzalez arrested Stephens when handcuffing Stephens and reading Stephens the *Miranda* warnings or later when announcing the arrest. If we rule that Gonzalez only arrested Stephens after the confession and upon announcing the arrest, then we would decide that the handcuffing

constituted an investigatory stop, for which Gonzalez needed only a reasonable articulable suspicion that Stephens had engaged in criminal activity. *State v. Acrey*, 148 Wn.2d 738, 747, 64 P.3d 594 (2003). If we conclude that Officer Gonzalez arrested Stephens when handcuffing him, we would rule that Gonzalez needed probable cause before restraining and questioning him. *State v. Flores*, 186 Wn.2d 506, 520, 379 P.3d 104 (2016). The latter rule presents a higher standard for the State to fulfill.

We encounter limited difficulty in discerning the law of arrest because of loose terminology used in court opinions. The law uses many and often overlapping terms for various interactions between a law enforcement officer and a suspect or for that matter any citizen regardless of suspect designation. The words and expressions include "social contact," "stop," "investigative stop," "brief investigative stop," "stop and frisk," "*Terry* stop," "*Terry* investigative stop," "detainment" "detention," "limited detention," "involuntary detention," "investigatory detention," "brief, investigative detention," "seizure," "present confinement," "restraint," "physical restraint," "physical intrusion," "arrest," "custody," "custodial arrest," "full custodial arrest," and "formal arrest." *State v. Mecham*, 186 Wn.2d 128, 138, 380 P.3d 414 (2016); *State v. Flores*, 186 Wn.2d 506, 512 (2016); *State v. Patton*, 167 Wn.2d 379, 387, 219 P.3d 651 (2009); *State v. Reichenbach*, 153 Wn.2d 126, 135, 101 P.3d 80 (2004); *State v. Lorenz*, 152 Wn.2d 22, 36-37, 93 P.3d

133 (2004); *State v. Acrey*, 148 Wn.2d at 746 (2003); *State v. Kennedy*, 107 Wn.2d 1, 4, 726 P.2d 445 (1986); *State v. Rupe*, 101 Wn.2d 664, 683-84, 683 P.2d 571 (1984); *State v. Marcum*, 149 Wn. App. 894, 902-03, 910, 205 P.3d 969 (2009); *State v. Salinas*, 169 Wn. App. 210, 217, 279 P.3d 917 (2012); *State v. Gering*, 146 Wn. App. 564, 566-67, 192 P.3d 935 (2008); *State v. Radka*, 120 Wn. App. 43, 48-50, 83 P.3d 1038 (2004). For purposes of our analysis, we label any contact between the officer and a citizen that restrains the citizen's movement or seeks to restrain the citizen's movement a "seizure," since the Fourth Amendment to the United States Constitution employs the word. In turn, we pigeonhole an officer's seizure of a suspect such that the seizure requires probable cause as an "arrest." Finally, we categorize an officer's temporary seizure of a suspect such that the seizure demands only a reasonable articulable suspicion as an "investigatory stop." We explore below the parameters of the distinction between an investigatory stop and an arrest, although one court impliedly suggested placing the plow before the mule by focusing on whether we believe the officer should have had probable cause before restraining and questioning the suspect and then deciding whether the suspect was under arrest based on our desire as to whether the officer should have had probable cause. *State v. Williams*, 102 Wn.2d 733, 739-40, 689 P.2d 1065 (1984).

Based on both the federal and state constitutions, Washington recognizes, at least in theory, almost an absolute bar to warrantless seizures. *State v. Flores*, 186 Wn.2d 506, 512 (2016). Officer Albert Gonzalez seized Kenneth Stephens without a warrant.

One exception to a warrant requirement is an investigative or *Terry* stop. *State v. Acrey*, 148 Wn.2d 738, 746 (2003). A *Terry* stop amounts to a seizure, although it is less intrusive than a custodial arrest. *State v. Kennedy*, 107 Wn.2d 1, 4 (1986). An investigatory stop permits an officer to briefly detain and question an individual on less than probable cause. *State v. Acrey*, 148 Wn.2d at 746-47. To initiate an investigatory stop, the officer needs a well-founded suspicion based on objective facts that the individual is connected to actual or potential criminal activity. *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *State v. Sieler*, 95 Wn.2d 43, 46, 621 P.2d 1272 (1980).

An arrest diverges from an investigatory stop. The classic definition of arrest consists of "'the apprehending or restraining of one's person, in order to be forthcoming to answer an alleged or suspected crime.'" *State v. Rupe*, 101 Wn.2d at 683-84 (1984) (quoting EDWARD C. FISHER, LAWS OF ARREST 7 (1967) (quoting 4 WILLIAM BLACKSTONE, COMMENTARIES *288). When judging whether an arrest occurred, the court first asks whether the individual was free to leave the presence of the police. *State*

9

*v. Rupe*, 101 Wn.2d 664, 684 (1984). The court then assesses the likelihood that the present confinement will be accompanied by future interference with the individual's freedom of movement. *Terry v. Ohio*, 392 U.S. 1, 26 (1968); *State v. Rupe*, 101 Wn.2d at 684. The second step reflects the common law notion that an arrest constitutes more than a present confinement. *State v. Rupe*, 101 Wn.2d at 684.

An arrest takes place when a duly authorized officer of the law manifests an intent to take a person into custody and actually seizes or detains such person. *State v. Ortega*, 177 Wn.2d 116, 128, 297 P.3d 57 (2013); *State v. Patton*, 167 Wn.2d 379, 387 (2009). The inquiry is whether a reasonable person under the circumstances would consider himself or herself under arrest. *State v. Ortega*, 177 Wn.2d 116, 128 (2013); *State v. Reichenbach*, 153 Wn.2d at 135(2004). The existence of an arrest depends in each case on an objective evaluation of all the surrounding circumstances. *State v. Patton*, 167 Wn.2d 379, 387 (2009). Examples of conduct that would cause a reasonable person to believe he or she was under arrest include handcuffing the suspect, placing the suspect in a patrol vehicle for transport, and telling the suspect that he or she is under arrest. *State v. Ortega*, 177 Wn.2d 116, 128 (2013); *State v. Radka*, 120 Wn. App. 43, 49-50 (2004).

The State argues that a suspect is not under arrest until the officer advises him he is under an arrest. Although the law deems an officer's announcement of an arrest to be

10

one factor, the arresting officer need not orally communicate the intent to arrest for the court to find an arrest. *State v. Salinas,* 169 Wn. App. 210, 218 (2012); *State v. Turpin*, 25 Wn. App. 493, 499, 607 P.2d 885 (1980), *rev'd on other grounds*, 94 Wn.2d 820, 620 P.2d 990 (1980); *City of Seattle v. Sage*, 11 Wn. App. 481, 485, 523 P.2d 942 (1974).  A person may be arrested even if the officer mistakenly believes otherwise.  *State v. Turpin*, 25 Wn. App. 493, 499 (1980).  If we adjudged an arrest to transpire only after a proclamation by the law enforcement officer, law enforcement could manipulate and deny Fourth Amendment rights by delaying or omitting an announcement of arrest.

The State emphasizes that Officer Albert Gonzalez did not intend to arrest Kenneth Stephens until after Stephens confessed.  In turn, the State argues that the officer's intent controls whether or not the court should categorize the seizure as an arrest or as an investigatory stop.  In so arguing, the State contravenes the reasoning of *State v. Radka*, 120 Wn. App. 43, 49 (2004).

According to *State v. Radka*, 120 Wn. App. 43, 49 (2004), the determination of custody hinges on the "'manifestation' of the arresting officer's intent."  Although this quote refers to the officer's intent, the quote does not end there.  The manifestation of the intent, not the subjective intent controls.  Furthermore, this court, in *State v. Radka*, noted that Washington courts moved away from relying on the officer's subjective intent.

11

As already written, case law, and even *State v. Radka*, emphasizes the test of when an arrest transpired focuses on what the reasonable suspect would believe. The law employs an objective test to determine whether a person is in a custodial arrest. *State v. Reichenbach*, 153 Wn.2d 126, 135, 101 P.3d 80 (2004). A suspect is in custody if a reasonable person in the suspect's circumstances would believe his movements were restricted to a degree associated with formal or custodial arrest. *Berkemer v. McCarty*, 468 U.S. 420, 440, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984); *State v. Reichenbach*, 153 Wn.2d 126, 135 (2004); *State v. Lorenz*, 152 Wn.2d 22, 36-37 (2004); *State v. Gering*, 146 Wn. App. 564, 567 (2008). The test is whether a reasonable detainee under these circumstances would consider himself or herself under full custodial arrest. *State v. Gering*, 146 Wn. App. at 567 (2008); *State v. Radka*, 120 Wn. App. at 49.

Kenneth Stephens underscores his being handcuffed. In response, the State argues that handcuffing alone does not necessarily lead to a conclusion that a suspect is under arrest. We agree. A law enforcement officer may handcuff a suspect during an investigatory stop, but generally the officer must articulate a reason for deeming the suspect dangerous or a risk of flight. *State v. Williams*, 102 Wn.2d 733, 740-41 (1984); *State v. Cunningham*, 116 Wn. App. 219, 229, 65 P.3d 325 (2003); *State v. Gering*, 146 Wn. App. 564, 567 (2008). Officer Albert Gonzalez never testified that he considered

12

Kenneth Stephens threatening, let alone identified a reason for considering Stephens dangerous. Officer Gonzalez never testified he was worried about Stephens escaping.

In some Washington decisions, handcuffing was part of the arrest. *State v. Williams*, 102 Wn.2d 733, 740, 689 P.2d 1065 (1984); *State v. Salinas,* 169 Wn. App. at 218-19 (2012); *State v. Gering*, 146 Wn. App. 564 (2008). Accordingly, handcuffing a suspect signifies an arrest. *State v. Rowland*, 172 Ariz. 182 836 P.2d 395, 397 (Ct. App. 1992). Handcuffing is a hallmark of a formal arrest. *Broom v. United States*, 118 A.3d 207, 213 (D.C. 2015). Handcuffing communicates to the suspect that he is under arrest. *State v. Turpin*, 25 Wn. App. at 499 (1980).

In *State v. Gering*, 146 Wn. App. 564 (2008), the law enforcement officer asked Robert Gering to step outside of a business. When Gering complied, the officer handcuffed him. This court determined the officer to have then arrested Gering. The facts did not show whether the officer ever informed Gering, when handcuffing him, that he was under arrest. But conversely, the facts did not indicate that the officer ever told Gering he was free to leave.

Kenneth Stephens also astutely highlights the delivery of the *Miranda* warnings. Generally, the officer gives *Miranda* warnings only after the arrest. *See State v. Marcum*, 149 Wn. App. 894 (2009); *State v. Turpin*, 25 Wn. App. 493 495, (1980). The law does

13

not require an officer to give the *Miranda* warnings until after the arrest. *State v.*

*Marcum*, 149 Wn. App. 894, 911 (2009). Giving a defendant *Miranda* warnings weighs

in favor of concluding that an arrest occurred because most people associate the warnings

with arrest. *State v. Snyder*, 240 Ariz. 551, 555, 382 P.3d 109, 113 (Ct. App. 2016);

*People v. Ollie*, 333 Ill. App. 3d 971, 777 N.E.2d 529, 539, 267 Ill. Dec. 726 (2002).

We create no per se rule that a suspect is under arrest if read *Miranda* rights or

under arrest if handcuffed. Nevertheless, based on the totality of the circumstances, we

conclude that Officer Albert Gonzalez arrested Kenneth Stephens when handcuffing him.

Before the cuffing of Stephens, Gonzalez instructed Stephens he was not fee to leave.

Immediately before or after shackling Stephens, Gonzalez read the *Miranda* rights. The

handcuffing and warnings directly led to the questioning of Stephens, the search of

Stephens' person, and the incarceration of Stephens.

The State argues that some intermediate level of contact between a law

enforcement officer and a suspect fits between an investigatory stop and an arrest. The

State labels this halfway ground as "custody." Nevertheless, the State presents no Fourth

Amendment law supporting a legal land of limbo.

The State argues that Officer Albert Gonzalez merely acted prudently when issuing

the *Miranda* warnings and putting Kenneth Stephens in handcuffs. This argument directs

us again to address the subjective intent of the officer. To repeat, we adjudge whether the

officer arrested an individual based on whether a reasonable person would deem himself

or herself under arrest.

Kenneth Stephens assigns error to those portions of findings of fact 2.5 and 2.6

that state that he was first "detained" and then later "arrested" only after making

inculpatory statements. We consider the findings, to the extent they label the conduct of

Officer Albert Gonzalez, to be legal conclusions because the findings do not simply

describe the underlying facts. We review conclusions of law de novo. *State v. Garvin*,

166 Wn.2d 242, 249, 207 P.3d 1266 (2009). Appellate courts review a trial court's

custodial determination de novo. *State v. Lorenz*, 152 Wn.2d at 36 (2004); *State v.

Gering*, 146 Wn. App. 564, 567 (2008).

A warrantless seizure is presumed unreasonable under the Fourth Amendment.

*State v. Acrey*, 148 Wn.2d 738, 746 (2003). Since Officer Albert Gonzalez arrested

Kenneth Stephens, rather than performing an investigatory stop, the State must show that

Gonzalez possessed probable cause that Stephens committed a crime. *State v. Grande*,

164 Wn.2d 135, 141, 187 P.3d 248 (2008). The State bears the burden of establishing

probable cause. *State v. Thompson*, 151 Wn.2d 793, 803, 92 P.3d 228 (2004).

The State argues that Officer Albert Gonzalez possessed probable cause to arrest Kenneth Stephens for theft, but we are uncertain as to whether the State bases this argument on the assumption that Gonzalez did not arrest Stephens until after the confession of taking cameras. Otherwise, the State focuses on thwarting Stephens's contention that Officer Gonzalez arrested Stephens before his confession. At any rate, despite Stephens's extensive analysis of whether probable cause existed, the State provided no evaluation as to whether Gonzalez possessed probable cause to arrest Stephens at the time that Gonzalez read him his *Miranda* rights. This court does not review issues not argued, briefed, or supported with citation to authority. RAP 10.3(a)(6); *Valente v. Bailey*, 74 Wn.2d 857, 858, 447 P.2d 589 (1968); *Avellaneda v. State*, 167 Wn. App. 474, 485 n.5, 273 P.3d 477 (2012). Because the State does not meet its burden of showing probable cause for the arrest of Kenneth Stephens, we suppress the evidence of the methamphetamine seized as a result of the search incident to arrest.

In addition to requesting that we suppress the evidence of the methamphetamine, Kenneth Stephens ask that we suppress his confession to stealing the cameras. Because the jury acquitted Stephens of trafficking in stolen property, we need not address this request.

CONCLUSION

We hold that the trial court erred when denying Kenneth Stephens' application to suppress evidence of methamphetamine found on his person. We reverse the conviction for and dismiss the charge of possession of a controlled substance.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Siddoway, J.

_____
Pennell, C.J.

17